NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 10-2522 (ES) |
| v. | OPINION |
| GILBERT MINGUCCI, et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Pending before this Court are Plaintiff United States of America's ("United States" or "the Government") Renewed Motion for Summary Judgment as to Count III of the Complaint, (D.E. No. 92), and Defendant Judith Fieramosca's ("Fieramosca") motion to compel the sale of certain real property, (D.E. No. 93, Notice Mot., July 17, 2013 ("Mot. to Compel")). The Court has considered the parties' submissions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons that follow, the Government's motion for summary judgment is GRANTED IN PART and Fieramosca's motion to compel sale is DENIED.

## I. FACTUAL BACKGROUND[1]

This case arises out of Defendants Gilbert ("Mr. Mingucci") and Estrellita Mingucci's ("Mrs. Mingucci," collectively "the Minguccis") failure to pay income tax liabilities assessed against them for tax years 1997-2007. (D.E. No. 47-2, Statement Facts Supp. Mot. Summ. J. ("SOF") ¶¶ 1, 4). As of May 10, 2010, the Minguccis owed the Government $429,304.09 in connection with these assessments, which were made between August 2000 and August 2008.

---

[1] The following facts are undisputed unless otherwise noted.

(*Id.* ¶¶ 1, 5). As a result of these assessments, federal tax liens arose and attached to all property and rights to property owned or acquired by the Minguccis. (*Id.* ¶ 6 (citing 26 U.S.C. § 6323)). Notices of these liens were recorded in Ocean, Essex, and Union Counties, New Jersey. (*Id.* ¶ 7).

The four real properties implicated in this action are located at 24 Hudson Street, Newark, N.J. (the "Newark Property"), 1156 Caldwell Avenue, Union, N.J. (the "Personal Residence), 106 West 26th Street, Ship Bottom, N.J. (the "Beach House"), and 1916 Longbeach Boulevard, Ship Bottom, N.J. ("the Hoagie Shop," together with the Beach House, the "Ship Bottom Properties"). (*Id.* ¶¶ 8, 9, 10, 15).

As of the filing of this action, the Minguccis were the sole owners of the Newark Property and the Personal Residence, (SOF ¶¶ 8, 9), and the Partnership was the sole owner of the Hoagie Shop, (SOF ¶ 16). At that time, Mr. Mingucci and his sister, Defendant Judith Fieramosca ("Fieramosca"), each held 1% general partnership interest and 49% limited partnership interest in the Partnership. The estate of their late mother Dorothy Mingucci currently holds title to the Beach House. (D.E. No. 84 Mots. Hr'g Tr. ("Tr.") at 61:2-3).

## II. PROCEDURAL HISTORY

On May 17, 2011, the Government filed this action to reduce to judgment the tax assessments against the Minguccis for tax years 1997-2007, and to foreclose the resulting federal tax liens against the Newark Property, the Personal Residence, the Beach House, and Mr. Mingucci's interest in the Partnership. (D.E. No. 1, Compl. ¶¶ 1, 23, 24, 29).

Greentree Mortgage Corporation, Fieramosca, the State of New Jersey, and Jennifer Mingucci, the Minguccis' daughter, were all named as defendants because of their potential or purported interests in the properties or the Partnership. (*Id.* ¶¶ 8-10, 12). Following Wells Fargo

Home Mortgage's ("Wells Fargo") acquisition of Greentree Mortgage Corporation, this Court granted the Government's motion to add Wells Fargo as a defendant in its place. (D.E. No. 16, Order, July 28, 2010).

On October 18, 2010, the Government filed an amended complaint to dismiss Defendant Jennifer Mingucci[2] and Count IV[3] of the initial complaint, and to seek foreclosure of Mr. Mingucci's interest in the Parntership and against an additional property, the Hoagie Shop, which it alleged Mr. Mingucci owned either directly or through the Partnership as his alter ego or nominee. (D.E. No. 20, Mot. Leave File 1st Am. Compl.; D.E. No. 21, 1st Am. Compl.). Fieramosca, Wells Fargo, and the State of New Jersey failed to join the action, and on June 7, 2011, this Court granted the Government's motion for default judgment against the three defendants. (D.E. No. 30, Order, June 7, 2011; D.E. No. 31, J.).

Shortly thereafter, this Court granted Fieramosca's unopposed motion to vacate the default judgment against her and allowed her to appear in this action. (D.E. No. 34, Mot. Vacate Default J.; D.E. No. 35, U.S.' Resp. to Mot. Vacate Default J.; D.E. No. 36, Order Vacating Default J.). Along with her Answer, Fieramosca filed a counterclaim against the Government, seeking to prevent it from encumbering her interest in the Ship Bottom Properties, and a cross-claim against Mr. Mingucci for debts she alleges are owed in connection with maintenance and upkeep on the two properties. (D.E. No. 37, Answer of Def. Fieramosca).

On January 20, 2012, the Government moved for summary judgment against the Minguccis, the Partnership, and Fieramosca. (D.E. No. 47, U.S.' Mot. Summ. J.). The

---

[2] Jennifer Mingucci, the Minguccis' daughter, was initially joined as a defendant because she possessed a 1% interest in the partnership. (Compl. ¶ 12). After the filing of this action, however, she transferred her interest back to Mr. Mingucci and thus no longer possessed an interest in any implicated property. (D.E. No. 20-1, Mem. Law Supp. U.S.' Mot. Leave File 1st Am. Compl. at 2-3).

[3] In Count IV, the Government had alleged that the Beach House was fraudulently transferred from the estate of Dorothy Mingucci to Fieramosca and sought to set aside the transfer. (Compl. ¶ 37). After Fieramosca transferred the property back to the estate, the relief sought was no longer apposite. (D.E. 20-1, Mem. Law Supp. U.S.' Mot. Leave File Am. Compl. at 4).

3

Government argued that no genuine issues of material fact existed as to the propriety or accuracy of the tax liability assessed against the Minguccis or the Government's entitlement to foreclose its liens against the Minguccis' interest in the four real properties. (D.E. No. 47-1, Br. Supp. U.S.' Mot. Summ. J. at 3-6).

As to the Partnership, the Government argued that Fieramosca's withdrawal dissolved the Partnership and rendered her and Mr. Mingucci "tenants in common to the property of the former partnership," which consisted exclusively of the Hoagie Shop, thereby giving the Government the right to foreclose against Mr. Mingucci's interest in the real property directly. (*Id.* at 6). In the alternative, the Government argued that if the Partnership remained in effect, its lien attached to Mr. Mingucci's interest in the Partnership and that foreclosure of this interest was proper. (*Id.* at 6 n.2). The Government argued that the interest in the Ship Bottom Properties and proceeds of their sale should be divided equally between Fieramosca and the Government in satisfaction of its lien against the Minguccis. (*Id.* at 5-6; D.E. No. 49, U.S.' Resp. to Def. Fieramosca's Br. at 1)

In opposition, the Mingucci Defendants "concede[d] that there [is] no genuine issue of material fact with regard to [the Government's] claim that [it] has properly and timely assessed unpaid federal income tax liabilities for the 1997-2007 tax years against [the Minguccis]." (D.E. No. 50, Br. Mingucci Defs. in Opp. to U.S.' Mot. Summ. J. ("Mingucci Opp. Br.") at 1). They further conceded that "an Order should be entered requiring the sale of all but the Personal Residence." (*Id.* at 2). The Minguccis argued that the exclusion of Personal Residence from any order of sale was proper because of the probability that the lien would be satisfied by sale of the other three properties, and because a mortgage lien against the Personal Residence was "superior to the [Government's] lien . . . and ha[d] been the subject of a foreclosure proceeding." (*Id.*).

The Mingucci Defendants maintained "that the only remaining issue in this matter [was] the proper apportionment of the shares in [the Ship Bottom Properties]," jointly owned by Mr. Mingucci and Fieramosca. (*Id.* at 1-2). They further noted that negotiations for sale of the Newark Property and the Hoagie Shop were already in progress, with the proceeds from the sale of the Hoagie Shop to be apportioned between Mr. Mingucci and Fieramosca consistent with their respective interests in the property. (*Id.* at 3).

Fieramosca took a position similar to that of the Mingucci Defendants, arguing that proper adjudication of interests in the Ship Bottom Properties must take place prior to this Court apportioning the proceeds of their sale—her position differing only with regard to what would constitute proper apportionment. (D.E. No. 48, Br. Def. Fieramosca ("Fieramosca SJ Opp.") at 4-5; D.E. No. 52, Reply Br. Def. Fieramosca ("Fieramosaca SJ Reply") at 7). Specifically, Fieramosca objected to the Government's position that proceeds of the sale of the Ship Bottom Properties should be divided equally, arguing that such an apportionment would not accurately reflect and compensate her for her interest in the properties, which must be protected from seizure by the Government in its attempt to foreclose its lien against the Minguccis. (Fieramosca SJ Opp. at 4-5; Fieramosaca SJ Reply at 3-4, 7).

While the Government's summary judgment motion was pending, Fieramosca moved this Court to compel the sale of the Ship Bottom Properties. (D.E. No. 68, Notice Mot., Aug. 29, 2012). Fieramosca claimed that a potential sale of the Beach House had been negotiated and requested that this Court allow the sale to proceed, with proceeds to be divided equally between Fieramosca and the Government, though reserving her right to make any related claims in probate court. (*Id.* ¶¶ 1-3). She further requested this Court to prospectively allow the sale of the Hoagie Shop—with proceeds to be divided equally between her and the Government, subject

to "the resolution of carrying costs"—and to prevent the Minguccis from interfering with either sale. (*Id.* ¶¶ 4, 6). The Government objected, arguing that Fieramosca had no right to force the private sale of the properties and that "any Court-ordered sale must be conducted in accordance with 26 U.S.C. § 7403." (D.E. No. 71, U.S.' Resp. to Fieramosca's Mot. Compel Sale at 2).

This Court held oral argument on September 18, 2012, during which the Government's motion for summary judgment and Fieramosca's motion to compel sale of the Ship Bottom properties were both resolved. (Tr.; D.E. No. 73, Letter Order, Sept. 18, 2012 ("SJ Order")). This Court granted summary judgment to the Government on Counts I and II, reducing the tax assessments to judgment, (Tr. at 69:7-9), and foreclosing the federal tax against the Newark Property and the Personal Residence, (Tr. at 71:9-72:4). With respect to the Newark Property, this Court ordered foreclosure proceedings to commence immediately. (Tr. at 72:1-9).

However, in accordance with an agreement by the parties, this Court delayed for seven months the foreclosure proceedings and issuance of an order for sale of the Personal Residence to give the Minguccis time to attempt to sell the property. (Tr. at 71:1-19). The Government withdrew its motion for summary judgment with respect to Counts III, IV, and V, and Fieramosca withdrew her motion to compel sale of the Ship Bottom Properties. (SJ Order). This Court gave Mr. Mingucci and Fieramosca 120 days to attempt to sell the two properties, at the expiration of which the Government and Fieramosca were given leave to re-file their respective motions. (Tr. at 72:10-24).

On October 3, 2012, upon motion by the Government, this Court entered an Order of Sale foreclosing the federal tax lien against the Minguccis' interest in the Newark Property and the Personal Residence, and ordering the sale of the two properties consistent with this Court's summary judgment ruling. (D.E. No. 75, Mot. Entry Order Sale; D.E. No. 76, Order Sale).

6

On April 22, 2013, the Government sought leave to amend its complaint to add Midland Funding LLC ("Midland") and Discover Bank ("Discover") as additional defendants because they may possess an interest in the Newark Property, Beach House, or Personal Residence. (D.E. No. 90, Mot. Leave File 2d Am. Compl.). In support of its motion to amend the complaint, the Government submitted stipulations entered into with each of the proposed additional defendants. (D.E. No. 91, Br. Supp. U.S.'s Mot. Leave File 2d Am. Compl., Ex. A, Stipulations "Stipulations"). In their respective stipulations, Midland and Discover each agreed that it did not oppose any relief sought by the Government and recognized that any interest it may have in the relevant properties is inferior to that of the Government. (*Id.* ¶¶ 1-3). Midland and Discover also reserved "the right to assert a claim to any proceeds of the sale of the Real Properties that remain after the [Government's] tax liens have been satisfied in full." (*Id.* ¶¶ 5). This Court granted the Government's motion and the Government filed its Second Amended Complaint on September 25, 2013. (D.E. No. 96, Order, Sept. 24, 2013; 2AC).

Subsequent to this Court's ruling on the Government's initial motion for summary judgment, Counts IV and V were resolved by the parties. (D.E. 92, Br. Supp. U.S.' Renewed Mot. Summ. J. ("U.S. Br.") at 2). The Hoagie Shop was sold and the proceeds have been distributed in a manner consistent with this Court's ruling. (*Id.*).

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). A genuine issue of material fact

exists for trial when a reasonable finder of fact could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact-finder could rule in its favor." *Azur*, 601 F.3d at 216 (internal quotation marks omitted). "In determining whether summary judgment is warranted '[t]he evidence of the non[-]movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) (alteration in original). The non-moving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

While Rule 56 "requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial', it is 'well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond.'" *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 19-20 (1st Cir. 1989)). This is because Rule 56(e) "makes a specific provision for this eventuality" and, in the absence of opposition to the motion, nevertheless requires a specific finding by the court that judgment for the moving party is appropriate. *Id.*; Fed. R. Civ. P. 56(e) (stating that when a party fails to respond, the court may "grant summary

judgment if the motion and supporting material—including the facts considered undisputed—show that the movant is entitled to it"). Accordingly, "[w]here the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs.*, 922 F.2d at 175 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

### B. Analysis

In ruling on the Government's initial motion for summary judgment, this Court reduced to judgment the tax liability assessed against the Minguccis for tax years 1997-2007. (Tr. 69:6-9). The Government now seeks summary judgment to recover the judgment in its favor by foreclosing its liens against Mr. Mingucci's undivided one-half interest in the Beach House, title to which is currently held by the estate of Dorothy Mingucci. (U.S. Br. at 5). This motion is unopposed.

Pursuant to 26 U.S.C. § 7403(a), where a taxpayer has neglected or refused to pay tax liability assessed against him, the Government may "subject any property, of whatever nature, of the delinquent, or in which he has any right title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). When the Government seeks to enforce its lien, the court "shall . . . finally determine the merits of all claims to and liens upon the property, and . . . may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). While the court has discretion to decline to order a forced sale, "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *United States v. Rodgers*, 461 U.S. 677, 71 (1983).

There is no dispute that Mr. Mingucci and Fieramosca, as heirs to the estate of Dorothy Mingucci, each inherited one-half interest in the Beach House, subject to administration of the estate. *See* SOF ¶ 13; N.J.S.A. 3B:5-14 (intestate's estate descends as tenancy in common). However, because the estate has not yet been fully administered and title to the Beach House remains in the name of the estate, a question arises as to whether this Court has the authority to order the sale of the property. While no party has addressed this issue in full, it is this Court's duty to determine whether the Government is entitled to judgment as a matter of law. *Anchorage Assocs.*, 922 F.2d at 175 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

While district courts "have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress," 28 U.S.C. § 1345, there is a well-established probate exception to this jurisdiction which reserves jurisdiction over certain probate matters to the appropriate state court. *See United States v. Tyler*, 528 F. App'x 193, 197 (3d Cir. 2013). The probate exception is "narrow" and "distinctly limited [in] scope." *Marshall v. Marshall,* 547 U.S. 293, 305, 310 (2006). It applies when a federal court is endeavoring to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *See Three Keys Ltd. v. SR Util. Holding Co.,* 540 F.3d 220, 227 (3d Cir. 2008). *See also Marshall,* 547 U.S. at 296 ("[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate."). Further, the probate exception "precludes federal courts from disposing of property that is in the custody of a state probate court." *Marshall,* 547 U.S. at 296.

Until the estate of Dorothy Mingucci has been fully administered and is closed, the Beach House remains property of the estate and under the jurisdiction of the state probate court alone.

*See id.* In New Jersey, "at decedent's death the title to his realty passes directly, in the case of intestacy, to his heirs." *Orland Props., Inc. v. Broderick*, 228 A.2d 95, 98 (N.J. Super. Ct. Ch. Div. 1967). Accordingly, the Government's lien attached to Mr. Mingucci's interest in his mother's estate immediately upon her death. *Id.*; *In re Van Doren's Estate*, 180 A. 841, 841 (N.J. Prerog. Ct 1935) ("[T]itle to real estate vests in the heir at law immediately upon the death of the ancestor, and at the same instant the lien of a judgment against such heir attaches to his interest in the land."). While this Court has the authority to "decree petitioner's right in the property to be distributed after [the estate's] administration," it may not "disturb or affect the possession of property in the custody of a state court." *Markham v. Allen*, 326 U.S. 490, 494 (1946).

Though this Court has limited discretion to decline to order the forced sale of a property in which a delinquent taxpayer has an interest, *Rodgers*, 461 U.S. at 71, it may not administer the estate of Dorothy Mingucci. *Three Keys Ltd.,* 540 F.3d at 227. Recognizing the balance that must be struck between these two imperatives, this Court does no more than assign Mr. Mingucci's interest in the estate of Dorothy Mingucci to the Government. By this assignment, together with the Court's prior ruling reducing to judgment the federal tax liens recoverable against all property or rights to property in which Mr. Mingucci has an interest, the Government may now move the appropriate court to close the estate and distribute its assets according to state probate law. *Markham*, 326 U.S. at 494.

## IV. MOTION TO COMPEL SALE

This Court need not address in full Fieramosca's motion to compel private sale of the Beach House without the consent of Mr. Mingucci. The probate exception to this Court's jurisdiction prevents the Court from ordering the private sale of the Beach House while title

11

remains in the name of the estate of Dorothy Mingucci, as doing so would directly "affect the possession of property in the custody of a state court." *Id.*

## V. CONCLUSION

For the reasons stated above, this Court GRANTS IN PART the Government's renewed motion for summary judgment as to Count III of the Complaint, and assigns Mr. Mingucci's interest in the estate of Dorothy Mingucci to the Government. This Court further DENIES Defendant Fieramosca's motion to compel the private sale of the Beach House property, title to which remains with the estate of Dorothy Mingucci. An appropriate order shall accompany this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
